UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| JAMES MILLER,<br><br>        PETITIONER,<br>v.<br><br>JANET NAPOLITANO, Secretary of Department of Homeland Security; ERIC H. HOLDER, Jr., United States Attorney General; and JOHN KERRY, Secretary of Department of State,<br><br>        RESPONDENTS. | 3:13-CV-00443 (CSH) |

**ORDER**

I.   **INTRODUCTION**

On April 4, 2013, Petitioner James Miller (hereinafter "Petitioner") filed a Complaint for Mandamus [Doc. 1], naming as Respondents Janet Napolitano, Secretary of the Department of Homeland Security, Eric H. Holder, Jr., United States Attorney General, and John Kerry, Secretary of Department of State (collectively hereinafter "Respondents"), seeking that this Court "compel [Respondents] and those acting under their authority to approve and issue, within thirty days, the immigrant visa which application was filed by [Petitioner] on behalf of his spouse Merline Wright." *Id.* at ¶1.

About two years before bringing this action in federal court, Petitioner filed an I-130 Petition for Alien Relative with the United States Department of Homeland Security on behalf of his spouse, Merline Wright (hereinafter "Wright"), "in order for her to become a Lawful Permanent Resident of the United States." *Id.* at ¶8. This petition was approved by the Department of Homeland Security

on June 17, 2011, and Petitioner subsequently received an I-797 Notice of Action Form from the Department of Homeland Security. This I-797 Notice of Action Form informed Petitioner that Wright's initial visa petition had been approved and sent to the Department of State, which processes all approved immigrant visa petitions that require consular action and forwards approved petitions to appropriate consulates. The I-797 Form also made clear that United States immigration status had not yet been confirmed upon Wright, not did it guarantee that she would necessarily "subsequently be found to be eligible for a visa, for admission to the United States, or for an extension, change, or adjustment of status." *Id.* at ¶9-10, Exhibit 1.

After Wright's file was sent to the Department of State by the Department of Homeland Security in accordance with general processing requirements, an interview with Wright concerning her visa application was conducted on January 19, 2012 at the United States Embassy in Kingston, Jamaica. *Id.* at ¶10-12. Following the interview, Petitioner was informed in a letter from the United States Embassy that the information Wright had provided during her "immigrant visa interview was not sufficient to overcome the belief" that Wright and Petitioner's "relationship was entered into for immigration purposes only," and that consequently Wright's petition would be returned to the Department of Homeland Security's United States Citizenship and Immigration Services (hereinafter "USCIS"), which would be in contact with Petitioner so that Petitioner could "be afforded the opportunity to provide additional documentary evidence to substantiate the relationship." *Id.* at Exhibit 4. "If the evidence submitted to USCIS [were found to be] compelling, the petition [would] be reaffirmed and returned" to the United States Embassy for processing. *Id.*

In his Complaint for Mandamus, Petitioner makes many allegations concerning Repondents' failure to issue Wright an Immigrant Visa, and asks that this Court "[i]ssue an order directing ...

[R]espondents and those acting under them to issue the Immigrant Visa within thirty days." *Id.* at ¶1. Petitioner's other demands for relief include prayers that this Court hear Petitioner's case and render a declaratory judgment that the Immigrant Visa should be approved and issued, and that the Court grant attorney's fees and costs. *Id.* at 5.

Respondents note in their Motion to Dismiss that on June 10, 2013 – roughly two months after Petitioner filed his Complaint for Mandamus with this Court – USCIS sent Petitioner a letter notifying him of the agency's position that Wright and Petitioner had married "for the sole purpose of obtaining U.S. immigration benefits" for Wright and that, given this position and belief, USCIS intended to revoke Wright's I-130 approval. [Doc. 6-1] at 2-3, [Doc. 6-2] at 1-2. The letter further stated that a final decision would be made on July 13, 2013, and that in the interim Petitioner could "either submit a written request to withdraw [his] petition" for Wright's visa, or he could "submit any additional documentation [he felt] established [he] did not enter into marriage for the sole purpose of obtaining immigration benefits and for the purpose of circumventing immigration law." [Doc. 6-2] at 2.

Respondents now inform the Court in their August 1, 2013 Status Report [Doc. 10] – which was filed in response to Court Order [Doc. 7] – that "[o]n or about July 2, 2013 ... [P]etitioner provided USCIS [with] a substantial body of documentary evidence in response" to the June 10, 2013 USCIS letter. [Doc. 10] at 1. Repondents further inform the Court that USCIS, presumably after receiving and reviewing Petitioner's submissions of supplementary evidence, has "decided not to revoke [Wright's] I-130 approval," and instead on July 25, 2013 notified Petitioner that it had "reaffirmed [its] previous decision on [Wright's] application or petition which the Department of State had previously returned for review, and had already "forwarded the case back to the

Department of State for Action." [Doc. 10-1]. Respondents advise the Court that the Department of State will in turn transfer this case to the United States Embassy in order "to schedule a Consular Officer's interview of [Wright] and to take other necessary steps for processing a visa." [Doc. 10] at 1-2.

Two days before Respondents filed their Status Report, Petitioner, also in compliance with a Court Order, filed a Reply to Respondents' Motion to Dismiss [Doc. 9]. In this Reply, Petitioner stated that he "desires a judicial determination of the approval and issuance of the Immigrant Visa and a declaration that the Immigrant Visa should be issued to Merline Wright." *Id.* at 1.

Echoing arguments raised in their Motion to Dismiss, Respondents contend in their Status Report that "this Court lacks jurisdiction to supervise the continuation of this process by the Department of State," as "there is no clear right that supports mandamus jurisdiction in this matter" and, "[f]urthermore, 'the doctrine of consular nonreviewability provides that courts do not have jurisdiction to review decisions made by consular officers regarding the grant or denial of visas.'" [Doc. 10] at 2 (quoting *Harinarine v. National Visa Center*, No. 13-CV-03141, 2013 WL 3766528 at *2 (E.D.N.Y. July 15, 2013)). The Court agrees.

## II.    SUBJECT MATTER JURISDICTION

A motion to dismiss for lack of subject matter jurisdiction is governed by Fed. R. Civ. P. 12(b)(1), under which a case is properly dismissed "when the court lacks the statutory or constitutional power to adjudicate the case." *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996). Both the moving and non-moving parties "may use affidavits and other materials beyond the pleadings themselves in support or in opposition to a challenge to subject matter jurisdiction" and the "district court also may inquire, by affidavits or otherwise, into the facts

as they exist." *Tuccio Development, Inc. v. Town of Ridgefield*, No. 3:06-CV-01821, 2008 WL 749855 at *1 (D. Conn. March 19, 2008) (quoting *Matos v. United States Dept. of Housing & Urban Development*, 995 F. Supp. 48, 49 (D. Conn. 1997) and *Land v. Dollar*, 330 U.S. 731, 735 (1947) (internal quotation marks omitted)). The party asserting that subject matter jurisdiction exists – here, Petitioner – bears the burden of proving it by a preponderance of the evidence, and all ambiguities and inferences will be drawn in those parties' favor. *Aurecchione v. Schoolman Transp. System, Inc.*, *Aurecchione v. Schoolman Transp. System, Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).

The Second Circuit has previously noted its "policy of liberal construction of complaints" with respect to 12(b)(1) motions to dismiss, in which "a colorable pleading of subject matter jurisdiction upon which the district court could ... rel[y] to adjudicate the complaint" is sufficient to allow a complaint to survive a 12(b)(1) motion. *Id.* The issue, therefore, "is not whether a [claimant] will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim[]. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely[,] but that is not the test." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

If, despite this policy of liberal construction of complaints, subject matter jurisdiction is found to be lacking, dismissal of an action from federal court is mandatory. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). *See, e.g., Manway Constr. Co. v. Housing Authority of Hartford,* 711 F.2d 501, 503 (2d Cir. 1983).

**III.   LEGAL DISCUSSION**

As an initial and general matter, a court's "jurisdiction under the mandamus statute is limited to actions seeking to compel the performance of a *nondiscretionary* duty." *Duamutef v. I.N.S.*, 386

F.3d 172, 180 (2d Cir. 2004).  As the United States Supreme Court has stated, "[t]he common-law writ of mandamus, as codified in 28 U.S.C. § 1361, is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant *owes him a clear nondiscretionary duty*."  *Heckler v. Ringer*, 466 U.S. 602, 616 (1984) (quoted in *Duamutef v. I.N.S.*, 386 F.3d at 180).  Simply put, it has long been the law that mandamus may not be employed by courts in order "to direct the exercise of judgment or discretion *in a particular way*."  *Wilbur v. United States ex rel. Kadrie*, 281 U.S. 206, 218 (1930) (emphasis added).

Petitioner asks in both his initial Complaint for Mandamus and his Reply to Respondents' Motion to Dismiss that this Court "declare that the Immigrant Visa *should* be issued to Merline Wright," that it make a "*judicial determination of the approval and issuance of the Immigrant Visa*." [Doc. 9] at ¶2 (emphasis added); *see also* [Doc. 1] at 5 ("Petitioner demands that the Court ... [i]ssue an order directing ... [R]espondents and those acting under them ... issue the Immigrant Visa within thirty days to Merline Wright; ... [or] alternatively, hear [P]etitioner's case and render a declaratory judgment that the Immigrant Visa should be approved and issued.")  Petitioner's demands do not concern the Court enforcing a non-discretionary duty of Respondents; rather, Petitioner demands that the Court direct the exercise of judgment or discretion of other governmental bodies in a particular way.  These requests exceed the general scope of the Court's mandamus jurisdiction.

Further, as the Second Circuit stated over three decades ago: "It is settled that" as a general matter "the judiciary will not interfere with the visa-issuing process," a precedent and policy which springs from "the basic principle" articulated by the United States Supreme Court: that it is solely "*Congress's power* to exclude aliens altogether from the United States, or to prescribe the terms and conditions upon which they may come to this country," and it is also *Congress's power* "to have its

declared policy in that regard enforced exclusively through executive officers, without judicial intervention."  *Wan Shih Hsieh v. Kiley*, 569 F.2d 1179, 1181 (2d Cir. 1978) (quoting *Kleindienst v. Mandel*, 408 U.S. 753, 766 (1972)).[1]  As a very recent case out of the Eastern District of New York noted, "Congress has vested United States consulate officers with the exclusive power to issue or deny visas," and, moreover, federal courts simply do not possess "the authority to grant a permanent resident visa."  *Harinarine v. National Visa Center*, 13-CV-03141, 2013 WL 3766528 (E.D.N.Y. July 15, 2013) (citations omitted).

The Court recognizes that the Second Circuit has in very limited and specific circumstances recognized that judicial review of an individual's I-130 petition is not unequivocally precluded, and accordingly that  "a district court may properly exercise jurisdiction" over cases involving such extreme and rare circumstances.  *See, e.g., Ruiz v. Mukasey*, 552 F.ed 269, 276 (2d Cir. 2009).

---

[1]  In his Reply to Respondents' Motion to Dismiss, Petitioner cites two cases in order to demonstrate that "[t]his Court possesses jurisdiction over this case." [Doc. 9] at 2.  Neither case, however, adequately supports Petitioner's proposition.  In *Firstland International Inc. v. U.S.U.N.S.*, 377 F.3d 127 (2d Cir. 2004), the Second Circuit merely held that because the agency then known as the Immigration and Naturalization Service did not comply with the notice requirements of a particular statute, it was therefore not authorized to revoke an individual's visa petition, and consequently this decision was not in the Attorney General's discretion, or was the federal district court divested of jurisdiction to hear plaintiffs' challenge to revocation.  *Id.* at 132.  This decision turned upon a statute's notice requirement, which the Court of Appeals held was a prerequisite to effective visa revocation, and has no bearing upon whether any individual *must* be awarded a Visa, or, more broadly, upon *how* an agency must find concerning specific matters within its discretion.  Accordingly, *Firstland International Inc.* is inapposite with respect to the question of whether this court may, in response to a Mandamus Complaint, direct a government agency to make a particular decision within that agency's purview or to act in certain manifestly discretionary ways.  Petitioner also cites *Sabhani v. Reno*, 197 F.3d 938 (8th Cir. 1999), which is concerned with whether a district court has jurisdiction to review a decision by the Board of Immigration Appeals concerning two individuals' visa petitions *which had already been ruled upon*, and to decide the merits of these individuals' petitions.  Assuming without deciding that the facts in that case are apposite to those at bar, this case is not controlling, as it was decided by the Eighth Circuit.

However, the Court need not here delve into the specifics of when and for what reasons – or, for that matter, under which statutes – it might possess such limited and discreet jurisdiction. This is because in the case at bar, USCIS has now "*decided not to revoke the I-130 approval*" previously granted to Wright, and because the National Visa Center will be transmitting Wright's case to the United States Embassy in order "to schedule a Consular Officer's interview and to take other necessary steps for processing a visa." [Doc. 10] 1-2 (emphasis added).

There is no final decision with respect to Wright's visa, and currently no undue delay of any such final decision; therefore even if it *were* within the Court's jurisdiction and discretion, the Court finds exactly zero reason at this juncture to consider reviewing or granting Wright's visa application. Put another way, even if such a matter were in theory under this Court's limited jurisdiction (and it is not), this Court would not grant Petitioner's Mandamus Complaint because it would be premature and inappropriate to do so given present circumstances. The second Consular Officer interview of Wright ought to proceed under ordinary agency procedures and timelines, and all subsequent ordinary visa-granting processes ought to continue to unfold without the extraordinary remedy of judicial interference.

The Court notes Petitioner's evocation of several federal statutes in order to demonstrate that this Court does indeed have jurisdiction over this case: 8 U.S.C. 1421 and 1447; 28 U.S.C. § 2201, 1331, and 1361; and 5 U.S.C. § 704. However, for the reasons discussed *supra*, the Court does not feel it is appropriate to, and will not, intervene. While the Court is sympathetic to Petitioner's claims, under the facts of this case it cannot and will not order USCIS to grant a Visa to Wright.

### III. CONCLUSION

The Court DISMISSES WITHOUT PREJUDICE Petitioner's Complaint for Mandamus for

lack of jurisdiction to adjudicate it.  The Court further notes that even were it to possess such jurisdiction, it would dismiss such Complaint as premature and, under present facts and circumstances, without merit.  The Clerk is directed to close the case.

      The foregoing is SO ORDERED.


Dated: New Haven, Connecticut
       August 5, 2013


                                      */s/Charles S. Haight, Jr.*
                                      Charles S. Haight, Jr.
                                      Senior United States District Judge